UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SCIONTI TROY HILL,

        Plaintiff,

v.                                          Case No. 3:22-cv-866-BJD-PDB

OFFICER PROCK et al.,

        Defendants.
_____

## ORDER

### I. Status

Plaintiff, Scionti Troy Hill, an inmate of the Florida Department of Corrections (FDC), is proceeding *pro se* and *in forma pauperis* on an Amended Complaint for the violation of civil rights under 42 U.S.C. § 1983 (Doc. 8). He alleges Defendants used excessive force and sexually assaulted him when conducting a cell extraction on June 17, 2022, at Florida State Prison (FSP). *See* Doc. 8 at 3–5.

On May 9, 2025, Defendants filed a Motion for Summary Judgment (Doc. 59), arguing in part that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA).[1] Plaintiff was to respond by

---

[1] Defendants also argue Plaintiff did not sustain a physical injury, barring him from recovering compensatory or punitive damages. *See* Doc. 59 at 11.

June 23, 2025. *See* Doc. 56 (Case Management and Scheduling Order); *see also* Docs. 6, 9, 30 (Orders advising Plaintiff that a response to a motion for summary judgment must be filed within 45 days, and that a failure to timely respond results in "the motion [being] subject to treatment as unopposed"). When Plaintiff did not respond to Defendants' Motion for Summary Judgment, the Court issued an Order directing Plaintiff to "(1) show satisfactory cause why the case should not be dismissed for his failure to comply with the order or otherwise prosecute the case; and (2) respond to the defendants' motion for summary judgment." *See* Doc. 62 (Order to Show Cause).

Plaintiff filed a response to the Order to Show Cause (Doc. 63), in which he contends he "already submitted" a response to Defendants' Motion "back in the month of April," apparently by "submitt[ing his] medical records to the Court." *See* Doc. 63 at 1. He asks for an extension of 60 days to "investigate what happen[ed] to [his] legal mail" and to obtain another copy of the purported response to mail it again. *Id.*

The Court finds Plaintiff's response to the Order to Show Cause insufficient. Specifically, Plaintiff's contention that he mailed a response to Defendants' Motion for Summary Judgment in April lacks credibility given Defendants filed their Motion the following month, on May 9, 2025. The Court received two filings from Plaintiff in May, but those were notices in which he

2

complained that he was having trouble obtaining his medical records from FDC, *see* Docs. 60, 61, further casting doubt on his assertion that he had already mailed a response to Defendants' Motion with supporting medical records. To the extent Plaintiff suggests in his present Motion (Doc. 63) that his May notices were intended to be a "response" to Defendants' Motion for Summary Judgment, they were not. In fact, the Court struck the notices for Plaintiff's failure to comply with the Federal Rules of Civil Procedure and the Local Rules. *See* Doc. 62.

Plaintiff has had ample time to respond to Defendants' Motion for Summary Judgment, and the Court has advised him on numerous occasions of the deadline by which to respond to a motion for summary judgment and that a failure to respond timely to a motion may result in the motion being treated as unopposed. *See* Docs. 6, 9, 30, 36. In the Notice to Pro Se Litigants, Plaintiff was advised as follows: "[F]or a motion to dismiss or for summary judgment, the party opposing the motion has 45 days to respond. . . . If a party fails to timely respond, the motion is subject to treatment as unopposed." *See* Doc. 6 ¶ 5.

In the Orders directing service of process—two of which were issued—Plaintiff was advised that he had 45 days to respond to a Rule 56 summary judgment motion. *See* Docs. 9, 30. Finally, when Plaintiff failed to timely

respond to Defendants' Motion to Dismiss, the Court issued an Order to Show Cause, reminding Plaintiff that a failure to timely respond to a motion subjects the motion "to treatment as unopposed." *See* Doc. 36 at 1.

The Court finds the circumstances do not warrant a further delay of the proceedings: Plaintiff's assertion that he already responded to Defendants' Motion is implausible; and Plaintiff has had ample opportunity to timely respond to Defendants' Motion, fully on notice of the consequences of not doing so. As such, the Court will deny Plaintiff's request for more time to "investigate what happen[ed]" and "obtain another copy" of a vague filing he claims to have sent to the Court and will treat Defendants' Motion for Summary Judgment as unopposed.[2] *See* M.D. Fla. R. 3.01(c).

## II. Defendants' Unopposed Motion

Even with the Motion being treated as unopposed, Defendants still must carry their burden under Rule 56 because "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

---

[2] On September 9, 2025, Defendants filed a Motion to Dismiss, asking the Court to dismiss the action for Plaintiff's failure to comply with the Court's Orders, or alternatively to treat their Motion for Summary Judgment as unopposed (Doc. 64). The Court will deny this Motion as moot.

*Catrett*, 477 U.S. 317, 323 (1986). *See also United States v. One Piece of Real Prop.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[A] district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

Additionally, Defendants argue Plaintiff failed to exhaust his administrative remedies, which is a matter in abatement, and therefore "treated" as if raised in a motion to dismiss even though it has been raised in a motion for summary judgment under Rule 56. *See Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) ("Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'"). As set forth in the Court's Order denying Defendants Prock and Tyrell's Motion to Dismiss, Defendants have the burden to demonstrate a failure to exhaust administrative remedies. *See* Doc. 42 at 4.[3]

When Defendants Prock and Tyrell initially raised an exhaustion defense in their Motion to Dismiss, the Court concluded they failed to carry

---

[3] The Court set forth the applicable legal standard for exhaustion in its Order on Defendants' Motion to Dismiss, *see* Doc. 42 at 4–6, and will not repeat it here.

their burden because they relied solely on Plaintiff's allegations and the two grievances Plaintiff filed with his Amended Complaint. *Id.* at 7. *See also Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint. Otherwise, exhaustion and other affirmative defenses must be raised in a responsive pleading." (internal citation omitted)).

In his Amended Complaint, Plaintiff alleges he filed a grievance in which he complained that officers entered his cell on June 17, 2022, and "physically [and] sexually abused" him, but his grievance was not returned or thrown away. *See* Doc. 8 at 7. He does not allege the steps he took to follow up on the missing grievance, nor does he allege that he followed through with the three-step grievance process, though he suggests he did not, saying he "stop[p]ed filing grievances because none were being returned." *Id.* at 8. Plaintiff also alleges he filed a PREA[4] complaint. *Id.*

Despite Plaintiff's apparent concession that he failed to exhaust his administrative remedies, because Plaintiff is "not required to affirmatively demonstrate exhaustion in [his] complaint[]," and Defendants relied solely on Plaintiff's allegations, the Court was unable to conclude that Plaintiff failed to exhaust his administrative remedies under the PLRA. *Id.* (internal

---

[4] Prison Rape Elimination Act.

6

quotation marks omitted).

With their Motion for Summary Judgment, Defendants cure the problem that prevented the Court from previously concluding Plaintiff failed to exhaust his administrative remedies. Specifically, they provide copies of grievances Plaintiff filed at FSP both before and after the incident. *See* Doc. 59-3; *see also* Doc. 66-1. According to these records, between May 9, 2022, and December 13, 2022, Plaintiff submitted multiple informal grievances but only two formal grievances, both of which he filed before the June incident that is the subject of his Amended Complaint. *See* Doc. 59-3 at 2, 5.

Most of the informal grievances relate to other matters (e.g., property or clothing, religious materials, requests for forms, disciplinary proceedings, the grievance process, Plaintiff's bank statement, and medical records review). *See generally id. See also generally* Doc. 66-1. Five of the informal grievances (including the two Plaintiff filed with his Amended Complaint) relate to or reference the June incident. *See* Doc. 59-3 at 11–13; Doc. 66-1 at 5. *See also* Doc. 8-1. Plaintiff submitted two informal grievances on July 17, 2022, one to the Warden and one to "IG Fish." *See* Doc. 59-3 at 11–12. In both, Plaintiff asked for the names of the five officers involved in the June 17, 2022 cell extraction. *Id.* Both were returned without action because Plaintiff did not file them within the timeframe required under the Florida Administrative

Code (FAC), which was twenty days. *Id.* (citing Fla. Admin. Code r. 33-103.011(1)(a)).[5] Plaintiff submitted a third informal grievance on July 22, 2022, again requesting the names of the officers involved in the cell extraction because all were "involved in a PREA/assault." *Id.* at 13. The grievance was denied. *Id.*

Plaintiff submitted two other informal grievances referencing the June incident—one on August 23, 2022, and one on October 18, 2022—but in each, he merely requested copies of medical records documenting the injuries he allegedly sustained on June 17, 2022. *See* Doc. 66-1 at 4–5. In each response, Plaintiff was advised he could review his records during a scheduled callout. *Id.*

In their Motion, Defendants reference "Plaintiff's Formal Grievance Logs," which the Court construed to mean an official internal FDC report that can be generated showing, in a spreadsheet format, an inmate's grievance-filing history during a specified timeframe. Such a report generally shows the dates on which an inmate submitted a particular kind of grievance, the nature of the complaint, the date of the response, and the disposition (i.e., returned,

---

[5] The first-received informal grievance (number 205-2207-0370) had a stamp that explained why the grievance was being returned (for failure to comply with the deadline), and the second one was returned with a note saying, "previously addressed," citing grievance number 205-2207-0370. *See* Doc. 59-3 at 11–12.

8

denied, or approved).[6] No such "log" was attached to Defendants' Motion. Therefore, the Court directed Defendants to supplement their exhibit. *See* Doc. 65. In accordance with that Order, Defendants clarified that their use of the term "logs" meant the actual formal grievances Plaintiff *had* filed with the FDC around or during the relevant time. They certify that, in responding to the Court's Order, they reviewed again "all records received from the [FDC]" related to Plaintiff's grievance history and contend, "Plaintiff did not file a formal grievance or appeal related to this controversy prior to filing suit." *See* Doc. 66 ¶¶ 3–4. Defendants assert, "There were no formal grievances [in FDC's records] . . . apart from those which were already attached to the Motion for Summary Judgment." *Id.* ¶ 4.

Given Defendants' assertion that they have provided the Court with all informal and formal grievances Plaintiff submitted during or around the relevant time, and Plaintiff's failure to file any documentation disputing Defendants' evidence, the Court accepts Defendants' representation and evidence showing Plaintiff did not timely or properly complete the three-step grievance process. The only informal grievances Plaintiff submitted that were even tangentially about the incident were mere requests for information—for

---

[6] *See, e.g.*, Case No. 3:21-cv-832-BJD-MCR (M.D. Fla.), Doc. 36-1 at 1, Doc. 36-2 at 1.

names of involved officers and to review medical records. Even if the informal grievances requesting the names of officers can liberally be construed as a complaint about the use-of-force incident, those grievances were returned without action or denied, and Defendants' records show Plaintiff did not file other grievances to satisfy the three-step grievance procedure. Defendants' records further show the only formal grievances Plaintiff filed around the time of the incident were about other matters.

Because Plaintiff has not filed a response in opposition to Defendants' Motion for Summary Judgment, his stance on exhaustion is limited to the allegations in his Amended Complaint, in which he suggests he exhausted his administrative remedies or such remedies were unavailable. *See* Doc. 8 at 7–8. Under the second step of the *Turner*[7] analysis, the Court must resolve disputed factual issues. *See Turner*, 541 F.3d at 1082. *See also Bryant*, 530 F.3d at 1376 (holding district courts must act as factfinders when ruling on matters in abatement such as exhaustion).

First, the Court finds Plaintiff's assertion that he filed a grievance in which he explicitly mentioned a physical and sexual assault belied by the evidence Defendants provide in which Plaintiff filed informal grievances only

---

[7] *Turner v. Burnside*, 541 F.3d 1077, 1082–83 (11th Cir. 2008).

indirectly complaining about the assault by asking for officers' names. However, even if Plaintiff filed a grievance directly about the incident and that grievance was never returned (or thrown away), he still was obligated to complete the grievance process within the relevant timeframes. Under the FAC, "expiration of a time limit at any step in the process shall entitle the [inmate] to proceed to the next step of the grievance process." *See* Fla. Admin. Code r. 33-103.011(4). A lack of response to a grievance does not make the grievance process unavailable to an inmate or relieve him of his obligation to follow through with the process.

Plaintiff also alleges that he took other steps to complete the grievance process, including filing a PREA complaint, which resulted in an investigation by the Office of the Inspector General (OIG); telling Nurse Kissinger, Sergeant Alexander, Captain Covoy, and mental health staff; and writing letters to a family member and attorneys. *See* Doc. 8 at 7–8. Accepting as true Plaintiff did these things, his failure to complete the three-step grievance process cannot be excused.

With respect to oral complaints to prison staff and letters to non-prison staff, the FAC provides no exception to the exhaustion requirement for such communications. *See* Fla. Admin. Code rr. 33-103.001 through 33-103.018. The Supreme Court has made clear that Congress's mandatory language

11

"foreclos[es] judicial discretion" with respect to exhaustion, and the only exception to the PLRA's exhaustion requirement is the one "baked into its text": unavailability. *Ross v. Blake*, 578 U.S. 632, 639, 648 (2016).

Administrative remedies are deemed "unavailable" only in three narrow circumstances: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the procedural mechanism is "so opaque" that reasonable inmates cannot "navigate it"; or (3) when prison officials actively prevent inmates from using or accessing the grievance process through "machination, misrepresentation, or intimidation." *Id.* at 643–44. Plaintiff asserts no allegations suggesting his administrative remedies were unavailable to him. *See* Doc. 8 at 7–8.

Plaintiff also alleges the OIG investigated his claim of sexual assault following his PREA complaint. *Id.* at 7. In some circumstances, an investigation by the OIG may be relevant to the exhaustion analysis. For instance, when a prison official, in response to an inmate's grievance at any step of the process, reports the inmate's allegations to the OIG for investigation, then, regardless of whether the responding official "returns," "denies," or "approves" the grievance, the prisoner may be deemed to have exhausted his administrative remedies. *See, e.g., Luckey v. May*, No. 5:14-cv-

315-MW-GRJ, 2016 WL 1128426, at *11 (N.D. Fla. Feb. 17, 2016), *report and recommendation adopted sub nom.*, 2016 WL 1169481 (N.D. Fla. Mar. 22, 2016) (finding the plaintiff exhausted his administrative remedies because his informal grievance was "approved" from the standpoint that his allegations had been referred to the OIG). *See also Tierney v. Hattaway*, No. 3:20-cv-5738-LAC-ZCB, 2022 WL 18159995, at *2 (N.D. Fla. Dec. 9, 2022) ("Given that [the plaintiff's] informal grievance was 'approved,' and the matter referred to the [OIG], it would have been pointless for [him] to appeal by filing a formal grievance.").

Here, there is no evidence the OIG investigation resulted from Plaintiff having filed a grievance in compliance with the FAC but rather resulted from his separate PREA complaint.[8] *See Pavao v. Sims*, 679 F. App'x 819, 825 (11th Cir. 2017)[9] ("[The plaintiff's] efforts to seek redress from the . . . [OIG] are not relevant to the question of exhaustion because they are not part of the prison grievance procedure, and therefore are outside the 'boundaries of proper

---

[8] The FAC expressly includes complaints of "sexual abuse" as those that must be grieved in accordance with the applicable grievance procedures. *See* Fla. Admin. Code r. 33-103.002(17) (defining sexual abuse); *see also* Fla. Admin. Code r. 33-103.005(1) (providing that when an inmate grieves an allegation of sexual abuse, he may bypass the first step of the process and initiate the process at the second step by filing a formal grievance).

[9] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

13

exhaustion.'" (quoting *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th 2015))). *See also Fleming v. Espino*, No. 3:20-cv-853-MMH-JRK, 2021 WL 5083743, at *7 (M.D. Fla. Nov. 2, 2021) (concluding the OIG investigation was not relevant to the exhaustion analysis where there was no indication the investigation resulted from a grievance filed by the prisoner).

There is no authority providing that a PREA complaint overrides or substitutes the prison grievance procedure. On the contrary, "federal courts that have considered the issue have concluded that the PREA does not excuse an inmate's failure to exhaust his administrative remedies with respect to a claim of sexual misconduct." *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) (citing cases). *See also, e.g.*, *Haddox v. Meier*, No. 1:23-CV-461-PPS-AZ, 2025 WL 2084699, at *2 (N.D. Ind. July 24, 2025) ("[There is] no evidence any court has ever found that satisfying the PREA's reporting requirement is a valid substitute for exhausting a grievance under the PLRA."); *Barringer v. Stanley*, No. 5:16-CV-17-FDW, 2017 WL 1028595, at *3 (W.D.N.C. Mar. 16, 2017) ("PREA complaints are not prison grievances for purposes of satisfying the administrative remedies requirement under the PLRA."); *Owens v. Prince*, No. CV414-212, 2016 WL 4082679, at *4 (S.D. Ga. July 29, 2016), *report and recommendation adopted sub nom.*, 2016 WL 5030369 (Sept. 19, 2016) ("Several courts have held that [sic] PREA itself does

not create an alternative remedial scheme or abrogate PLRA's exhaustion requirement.").

For the reasons stated, the Court finds Defendants carry their burden to demonstrate Plaintiff failed to exhaust his administrative remedies. As such, the Court will not address Defendants' summary judgment argument related to Plaintiff's injuries.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 59) is **GRANTED in part** and **denied as moot in part**. The Motion is **GRANTED** only to the extent that the Court treats the exhaustion argument as if raised in a motion to dismiss and concludes Plaintiff failed to exhaust his administrative remedies. The Motion is otherwise **DENIED as moot**.

2. Plaintiff's Amended Complaint (Doc. 8) is **DISMISSED without prejudice** for his failure to exhaust his administrative remedies.

3. Plaintiff's request for more time to comply (Doc. 63) is **DENIED**.

4. Defendants' Motion to Dismiss (Doc. 64) is **DENIED as moot**.

5. The **Clerk** is directed to enter judgment dismissing the case without prejudice, terminate any pending motions as moot, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of September 2025.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Scionti Troy Hill
Counsel of Record